## GUARANTY AGREEMENT

This Guaranty Agreement (this "*Guaranty*"), dated as of March ___, 2021, by RICHARD SHAW, an individual ("*Guarantor*"), in favor of THE HUNTINGTON NATIONAL BANK, as Trustee (together with its successors and assigns, the "*Trustee*") under the hereinafter defined Trust Indenture for the multiple owners of the below-referenced Notes, (the Trustee and said Notes owners sometimes collectively referred to herein as the "*Guaranteed Parties*").

### PRELIMINARY STATEMENTS

A.  Effective as of December 1, 2018, New Hope Cultural Education Facilities Finance Corporation (the "Issuer"), issued Tax Exempt and Taxable Bonds to finance the acquisition, construction and equipment of a senior living facility in Plano, Collin County, Texas (the "Project") and advanced certain proceeds of such bonds to BSPV-Plano, LLC, a Texas limited liability company (the "Borrower" and collectively with Guarantor, the "Obligors"), which loan is evidenced by certain promissory notes (the "Notes").

B.  As a condition to the execution of a forbearance agreement dated as of even date herewith (the "Forbearance Agreement") related to certain delays in completion of the Project and related events of default under the Notes and related bond documents, the Guaranteed Parties have required, among other things, that the Guarantor execute and deliver this Guaranty.

C.  The Guarantor, through his indirect interest in the Borrower, will materially benefit from the forbearance and other terms provided by the Forbearance Agreement referenced in the preceding recital.

NOW, THEREFORE, for good and valuable consideration, receipt whereof is hereby acknowledged, the Guarantor hereby makes the following representations and warranties to, and hereby covenants and agrees with, the Guaranteed Parties as follows:

1.  All capitalized terms used herein without definition shall have the same meanings herein as such terms have in the Trust Indenture, dated as of December 1, 2018 by and between the Issuer and the Trustee (the "Indenture"), and the rules of construction set forth therein shall apply equally to this Guaranty *mutatis mutandis*.

2.  The Guarantor hereby guarantees to the Guaranteed Parties Borrower's completion of construction of the Bridgemoor senior living apartment complex, Plano, Texas in accordance with (i) the plans and specifications therefor filed with the City of Plano, Texas, and (ii) the construction agreement (AIA Form A102-2017) dated July 10, 2018 between Borrower and the general contractor for the Project (which construction agreement is annexed hereto as Addendum A), at a cost not exceeding the amount allocated therefor under the approved final written budget for such construction, as such budget has been updated and modified in connection with the separate written Forbearance Agreement to be executed by Borrower, Trustee, and Guarantors ("*Guaranteed Obligation*"), provided, however that the two pending written construction loan draw applications of Borrower in the amount of $_____ dated January ___, 2021 and March

___, 2021, together totaling $_____, are fully funded to Borrower upon the date of execution of this Guaranty, and provided, further, that subsequent construction loan draw applications of Borrower are promptly funded to Borrower in accordance with the terms of the December 1, 2018 Indenture and related December 1, 2018 Loan Agreement as modified by the Forebearance Agreement.

3. The Guarantor further agrees to pay to the Guaranteed Parties the Guaranty Collection Costs. As used herein, the *"Guaranty Collection Costs"* shall mean all reasonable expenses, legal and/or otherwise (including court costs and reasonable attorneys' fees and expenses), paid or incurred by the Guaranteed Parties in endeavoring to collect the Guaranteed Obligation, or any part thereof, from the Guarantor, or in protecting, defending or enforcing this Guaranty in any litigation, bankruptcy or insolvency proceedings or otherwise, incurred subsequent to the effective date of the above-referenced Forebearance Agreement.

4. This Guaranty is a continuing, absolute, and unconditional guaranty, and shall remain in full force and effect until all of the Guaranteed Obligation shall be fully satisfied.

5. The liability hereunder shall in no way be affected or impaired by (and the Guaranteed Parties are hereby each expressly authorized to make from time to time, without notice to Guarantor), any sale, pledge, surrender, compromise, settlement, release, renewal, extension, indulgence, alteration, substitution, exchange, change in, modification or other disposition of any of the Guaranteed Obligation, either express or implied, or of the Indenture, the Notes or any Borrower Document or any other contract or contracts evidencing any thereof, or of any security or collateral therefor. The liability hereunder shall in no way be affected or impaired by any acceptance by the Guaranteed Parties of any security for or other guarantors upon any of the Guaranteed Obligation, or by any failure, neglect or omission on the part of the Guaranteed Parties to realize upon or protect any of the Guaranteed Obligation, or any collateral or security therefor, or to exercise any lien upon or right of appropriation of any moneys, credits or property of any Obligor or other obligor or guarantor, possessed by any of the Guaranteed Parties, toward the performance of the Guaranteed Obligation, or by any application of payments or credits thereon. The Guaranteed Parties shall have the exclusive right to determine how, when and what application of payments and credits, if any, shall be made on said Guaranteed Obligation, or any part of same. In order to hold the Guarantor liable hereunder, there shall be no obligation on the part of the Guaranteed Parties, at any time, to resort for payment or performance to any Obligor or to any other obligor or guarantor, or to any other person, its property or estate, or resort to any collateral, security, property, liens or other rights or remedies whatsoever, and the Guaranteed Parties shall have the right to enforce this Guaranty against Guarantor irrespective of whether or not other proceedings or steps are pending seeking resort to or realization upon or from any of the foregoing.

6. All diligence in collection or protection, and all presentment, demand, protest and/or notice, as to anyone and everyone, whether or not the Borrower, the Guarantor or others, of dishonor and of default and of non-payment and of the creation and existence of any and all of said Guaranteed Obligation, and of any security and collateral therefor, and of the acceptance of this Guaranty, and of any and all extensions of credit and indulgence hereunder, are expressly waived by Guarantor. No act of commission or omission of any kind, or at any time, upon the

part of the Guaranteed Parties in respect to any matter whatsoever, shall in any way affect or impair this Guaranty.

7. Guarantor agrees that he will not exercise or enforce any right of exoneration, contribution, reimbursement, recourse or subrogation available to him against any person liable for payment of the Guaranteed Obligation, or as to any security therefor, unless and until the Guaranteed Obligation has been fully performed and satisfied and any commitments of the Guaranteed Parties to extend credit to the Borrower under the Borrower Documents shall have expired or terminated. The payment by Guarantor of any amount or amounts to the Guaranteed Parties pursuant hereto shall not in any way entitle the Guarantor, either at law, in equity or otherwise, to enforce any right, title or interest (whether by way of subrogation or otherwise) in and to any collateral security for performance of the Guaranteed Obligation or any other rights or remedies in any way relating thereto or in and to any amounts theretofore, then or thereafter paid or applicable to the payment thereof howsoever such payment may be made and from whatsoever source such payment may be derived unless and until all of the Guaranteed Obligation and all Guaranty Collection Costs have been performed and paid and satisfied in full; and unless and until performance and such payment in full and termination, any payments made by Guarantor hereunder and any other payments from whatsoever source derived on account of or applicable to the Guaranteed Obligation or any part thereof shall be held and taken to be merely payments in gross to the Guaranteed Parties reducing pro tanto the Guaranteed Obligation.

8. To the extent permitted by the Indenture, the Notes or the other Borrower Documents, each Guaranteed Party may, without any notice whatsoever to Guarantor, sell, assign or transfer all of its rights under this Guaranty, thereto in conjunction with the sale, assignment or transfer of its ownership interest in the Notes, and in that event it (or its designated authorized agent) shall have the right to enforce this Guaranty, by suit or otherwise, for the benefit of such assignee, transferee or holder as fully as if such assignee, transferee or holder were herein by name specifically given such rights, powers and benefits.

9. Guarantor waives any and all defenses, claims, and discharges of the Borrower and of any other obligor pertaining to the Guaranteed Obligation, except the defense of discharge by payment and performance in full and the defense of non-funding of Borrower's loan draw applications referenced in Paragraph 2 above. Subject to the foregoing sentence, Guarantor will not assert, plead or enforce against the Guaranteed Parties any defense of waiver, release, discharge in bankruptcy, statute of limitations, res judicata, statute of frauds, anti-deficiency statute, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to the Borrower or any other person liable in respect of any of the Guaranteed Obligation, or any set-off available against the Guaranteed Parties to the Borrower or any such other person, whether or not on account of a related transaction. Guarantor acknowledges and agrees that he is a guarantor, not a surety, under this Guaranty, and subject to the first sentence of this Paragraph 9, shall not raise any suretyship law as a defense to his obligations hereunder and waives, to the maximum extent permitted by law, all rights and defenses of a surety under applicable law.

In addition to the above, to the fullest extent permitted by law, subject to the first sentence of this Paragraph 9, Guarantor unconditionally and irrevocably waives: all suretyship

rights and benefits under the Texas Rules of Civil Procedure and any similar statutes or rules of procedure.

10. If any payment applied by the Guaranteed Parties to the Guaranteed Obligation is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of the Borrower or any other obligor), the Guaranteed Obligation to which such payment was applied shall for the purposes of this Guaranty be deemed to have continued in existence, notwithstanding such application, and this Guaranty shall be enforceable as to such of the Guaranteed Obligation as fully as if such application had never been made.

11. Guarantor hereby represents and warrants that:

(a) He is *sui juris* and has the full capacity, legal right, power and authority to enter into this Guaranty and to carry out and consummate all transactions contemplated by this Guaranty.

(b) This Guaranty is a legal, valid and binding agreement of the Guarantor, enforceable against such Guarantor, in accordance with its terms, except to the extent that the enforceability of this Guaranty may be limited by general principles of equity which may permit the exercise of judicial discretion, and by bankruptcy, insolvency, moratorium, reorganization or similar laws relating to the enforcement of creditors' rights generally, now or hereafter in effect.

(c) To the knowledge of the Guarantor, the execution and delivery of this Guaranty, the consummation of the transactions herein contemplated and the fulfillment of or compliance with the terms and conditions hereof, will not conflict with or constitute a violation or breach of or default (with due notice or the passage of time or both) under any indenture, mortgage, deed of trust, loan agreement, lease, contract or other material agreement or instrument to which the Guarantor is a party or by which he or his properties are otherwise subject or bound, or any applicable law or administrative rule or regulation, or any applicable court or administrative decree or order, or result in the creation or imposition of any prohibited lien, charge or encumbrance of any nature whatsoever upon any of the property or assets of the Guarantor, which conflict, violation, breach, default, lien, charge or encumbrance would materially and adversely affect the consummation of the transactions contemplated by this Guaranty or the financial condition, assets, properties, or operations of the Guarantor.

(d) There is no action, suit, proceeding, inquiry or investigation, before or by any court or federal, state, municipal or other governmental authority, pending, or to the knowledge of the Guarantor, threatened against or affecting the Guarantor or the assets, properties or operations of the Guarantor which, if determined adversely to the Guarantor or its interests, would have a material adverse effect upon the consummation of the transactions contemplated by or the validity of this Guaranty or upon the financial condition, assets or properties of the Guarantor, and the Guarantor is not in default with respect to any order or decree of any court or any order, regulation or demand of any federal, state, municipal or other governmental authority, which default would have consequences that would materially and adversely affect the consummation of the transactions contemplated by, or the validity of, this Guaranty or the financial condition,

assets or properties of the Borrower or the Guarantor. All tax returns (federal, state and local) required to be filed by or on behalf of the Guarantor have been filed (or extensions have been filed in respect thereof), and all taxes shown thereon to be due, including interest and penalties, except such, if any, as are being actively contested by the Guarantor in good faith, have been paid or adequate reserves have been made for the payment thereof.

(e)   No information, exhibit or report furnished to the Trustee or the Noteholder Representative by the Guarantor in connection with the negotiation of this Guaranty or the issuance of the Notes contains any untrue statement of a material fact or omits to state a material fact required to be stated therein or necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading.

(f)   The assumption by the Guarantor of the obligations hereunder will result in a direct financial benefit to the Guarantor; and the Guarantor has received a reasonably equivalent value therefor, and on the date hereof the Guarantor (i) is not insolvent; (ii) is not engaged or about to engage in a business or a transaction for which the remaining assets of the Guarantor are unreasonably small in relation to the business or transaction; and (iii) does not intend to incur, or believe or reasonably should believe that it will incur, debts beyond its ability to pay as such debts become due.

12.   Guarantor is fully aware of the financial condition of the Borrower and the requirements of the Indenture and the other Borrower Documents and is executing and delivering this Guaranty based solely upon its independent investigation of all matters pertinent hereto and is not relying in any manner upon any representation or statement by any Guaranteed Party. Guarantor hereby assumes full responsibility for obtaining any additional information concerning the financial condition and prospects of the Borrower and shall have no right to require any Guaranteed Party to obtain or disclose any information with respect to the Guaranteed Obligation, the financial condition or prospects of the Borrower, the ability of the Borrower to pay or perform the Guaranteed Obligation, the existence, perfection, priority or enforceability of any collateral security for any or all of the Guaranteed Obligation, the existence or enforceability of any other guarantees of all or any part of the Guaranteed Obligation, any action or non-action on the part of the Guaranteed Parties, the Borrower or any other Person, or any other event, occurrence, condition or circumstance whatsoever.

13.   Any invalidity or unenforceability of any provision or application of this Guaranty shall not affect other lawful provisions and applications hereof, and to this end the provisions of this Guaranty are declared to be severable. The liability of Guarantor under this Guaranty is in addition to and shall be cumulative with all other liabilities of the Guarantor to the Guaranteed Parties, as guarantor of the Guaranteed Obligation, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

14.   Any demand for payment on this Guaranty or any other notice required or desired to be given hereunder to the Guarantor shall be in writing (including, without limitation, notice by telecopy) and shall be given to the Guarantor at his address or telecopier number set forth on the signature page hereof, or to such other address or telecopier number as either such party may

hereafter specify by notice to the Guaranteed Parties given by courier, by United States certified or registered mail, postage prepaid, by telecopy or by other telecommunication device capable of creating a written record of such notice and its receipt. Each such notice, request or other communication shall be effective (a) if given by telecopier, when such telecopy is transmitted to the telecopier number specified in this Section and a confirmation of such telecopy has been received by the sender, (b) if given by mail, five (5) days after such communication is deposited in the mail, postage prepaid, certified or registered with return receipt requested, addressed as aforesaid, or (c) if given by any other means, when delivered at the addresses specified in this Section.

15. All payments to be made by Guarantor hereunder shall be made in immediately available and freely transferable funds at the place of payment specified by the applicable Guaranteed Party, all such payments to be paid without set-off, counterclaim or reduction and without deduction for, and free from, any and all present or future taxes, levies, imposts, duties, fees, charges, deductions, withholding or liabilities with respect thereto or any restrictions or conditions of any nature. If a Guarantor is required by law to make any deduction or withholding on account of any tax or other withholding or deduction from any sum payable by such Guarantor hereunder, such Guarantor shall pay any such tax or other withholding or deduction and shall pay such additional amount necessary to ensure that, after making any payment, deduction or withholding, the Guaranteed Parties shall receive and retain (free of any liability in respect of any payment, deduction or withholding) a net sum equal to what they would have received and so retained hereunder had no such deduction, withholding or payment been required to have been made. Every default in payment of the principal of or interest on the outstanding Notes shall give rise to a separate cause of action hereunder, and separate suits may be brought hereunder as each cause of action arises, provided that the Guaranteed Parties' right to bring separate causes of action hereunder shall not preclude the right of the Trustee to declare the entire amount of the outstanding Notes to be due and payable and pursuing either Guarantor for payment in full of all such due and payable amounts.

16. Any one or more of the following shall constitute an event of default (a "Guaranty Default") under this Guaranty (whatever the reason for such event and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body):

(i) default in the performance, or breach, of any covenant or warranty of Guarantor in this Guaranty (other than a covenant or warranty, a default in the performance or breach of which is elsewhere in this Section specifically dealt with), and the continuance of such default or breach for a period of 30 days after there has been given, by registered or certified mail, postage prepaid, to the Guarantor by the Trustee a written notice specifying such default or breach and requiring it to be remedied and stating that such notice is a "notice of default" hereunder; or

(ii) the occurrence of an event of default, as therein defined, under the Indenture, the other Note Documents, the Project Documents or any other agreement securing the Notes, and the expiration of the applicable grace period, if any, specified therein; provided that the existing defaults and anticipated defaults as described in the Forbearance Agreement shall not constitute a

FEBRUARY 2021 SHAW GUARANTY

Guaranty Default unless and until the period of forbearance under the Forbearance Agreement has properly been terminated; or

(iii) if Guarantor has become insolvent or makes a general assignment for the benefit of creditors, or any case, proceeding or other action under any existing or future Debtor Relief Law shall be filed or commenced by, against or in respect of Guarantor, or if Guarantor should at any time liquidate, dissolve, wind up his affairs or cease doing business, or contest, cancel or otherwise terminate his respective obligations under this Guaranty.

17. If a Guaranty Default exists, any and all obligations of the Guarantor shall, at the option of the Trustee, forthwith become due without notice or other action of any kind by the Trustee, and the Trustee may proceed, on or prior to the date of issuance by the City of Plano, Texas of its final certificate or certificates of occupancy for the Project (the "Final CO Issuance Date"), to protect its rights and the rights of the Beneficial Owners of the Outstanding Notes by suit in equity, action at law or other appropriate proceedings, whether for the specific performance of any covenant or agreement of the Guarantor herein contained or in aid of the exercise of any power or remedy granted to the Trustee under the other Note Documents, provided, that if any case, proceeding or other action under any existing or future Debtor Relief Law (hereinafter defined) shall be filed or commenced by, against or in respect of the Guarantor, the obligations of the Guarantor shall forthwith be due and performable, without notice or other action of any kind by the Trustee. The Trustee may proceed directly against Guarantor hereunder without resorting to any other remedies which it may have and without proceeding against any other security held by the Trustee. "*Debtor Relief Law*" means the Bankruptcy Code under Title 11 of the United States Code and all other liquidation, bankruptcy, assignment for the benefit of creditors, conservatorship, moratorium, receivership, insolvency, rearrangement, reorganization or similar debtor relief laws of the United States or other applicable jurisdictions in effect from time to time. Notwithstanding any other previsions of this Guaranty to the contrary, following the Final CO Issuance Date, Guarantor shall have no obligations to the Guaranteed Parties under this Guaranty absent their filing of a suit in equity, action at law, or claim in bankruptcy proceeding against Guarantor, prior to the Final CO Issuance Date, to enforce rights hereunder.

All payments received from the Borrower or Guarantor or on account of the Guaranteed Obligation from whatsoever source shall be taken and applied as payment in gross, and this Guaranty shall apply to and secure any ultimate balance that shall remain owing to the Guaranteed Parties.

18. The ability of any Beneficial Owner of any Note to institute any proceeding, judicial or otherwise, under or with respect to this Guaranty, shall be subject to the limitations on such Owner to institute any such proceeding upon an Event of Default under the Indenture as if such limitations applied to this Guaranty, *mutatis mutandis*, it being understood and intended, however, that no one or more Beneficial Owners of Notes shall have any right in any manner whatever by virtue of, or by availing, any provision of this Guaranty to affect, disturb or prejudice the rights of any other Beneficial Owners of Outstanding Notes, or to obtain or to seek to obtain priority or preference over any other Beneficial Owners or to enforce any right under this Guaranty, except in the manner herein provided and for the equal and ratable benefit of all Outstanding Notes.

19. In the event Guarantor should default under any of the provisions of this Guaranty and the Trustee (in its own name or in the name and on behalf of the Beneficial Owners of the Outstanding Notes) should employ attorneys or incur other expenses for the collection of any payments due hereunder or the enforcement of performance or observance of any agreement or covenant on the part of Guarantor herein contained, including, without limitation, in any bankruptcy, reorganization, receivership or other proceedings affecting creditors' rights and involving a claim under this Guaranty, such expenses shall constitute Guaranty Collection Costs and the Guarantor will on demand therefor pay to the Trustee the reasonable fees and expenses of such attorneys and such other expenses so incurred, in addition to all other amounts due hereunder.

20. Before any judgment or decree for payment of money due hereunder has been obtained by the Trustee, or the Noteholder Representative may, by written notice delivered to the Trustee and the Guarantor, waive any past default hereunder and its consequences.

Upon any such waiver, such default shall cease to exist, and any Guaranty Default arising therefrom shall be deemed to have been cured, for every purpose of this Guaranty and the Indenture; but no such waiver shall extend to any subsequent or other default or impair any right consequent thereon.

21. If any agreement contained in this Guaranty should be breached by Guarantor and thereafter waived as herein provided, such waiver shall be limited to the particular breach so waived and shall not be deemed to waive any other breach hereunder.

22. All rights, remedies and powers provided by this Guaranty may be exercised only to the extent the exercise thereof does not violate any applicable provision of law in the premises, and all the provisions of this Guaranty are intended to be subject to all applicable mandatory provisions of law which may be controlling in the premises and to be limited to the extent necessary so that they will not render this Guaranty invalid or unenforceable.

23. THE CONTRACTUAL AND OTHER GENERAL AGREEMENTS EVIDENCED BY THIS GUARANTY WILL BE GENERALLY GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS; *PROVIDED, HOWEVER,* TO THE EXTENT THAT ANY OF SUCH LAWS MAY NOW OR HEREAFTER BE PREEMPTED BY FEDERAL LAW, SUCH FEDERAL LAW SHALL SO GOVERN AND BE CONTROLLING. NOTHING HEREIN SHALL AFFECT THE RIGHT OF THE GUARANTEED PARTIES TO BRING ANY ACTION OR PROCEEDING AGAINST A GUARANTOR OR WITH RESPECT TO ANY A GUARANTOR'S PROPERTY IN COMPETENT COURTS IN OTHER JURISDICTIONS. This Guaranty and every part thereof shall be effective upon delivery to the Guaranteed Parties, without further act, condition or acceptance by the Guaranteed Parties, shall be binding upon the Guarantor and upon his legal representatives, successors, and assigns, , and shall inure to the benefit of the Guaranteed Parties, their successors, legal representatives, and assigns. Each Guarantor waives notice of the Guaranteed Parties' acceptance hereof. This Guaranty may be executed in counterparts and by different parties hereto on separate counterpart signature pages, each of which shall be an original but all together to be one and the same instrument. The execution and transmittal of this Guaranty by facsimile transmission or e-mail shall be of the same binding effect as a handwritten execution original copy of this Guaranty.

24. GUARANTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS GUARANTY, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY GUARANTOR, AND IS INTENDED TO ENCOMPASS DISCRETELY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. THE GUARANTEED PARTIES ARE HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY THE GUARANTOR.

[SIGNATURE PAGE TO FOLLOW]

IN WITNESS WHEREOF, the Guarantor has caused this Guaranty Agreement to be executed and delivered as of the date first above written.

"GUARANTOR"

RICHARD SHAW

*/s/ Richard Shaw*

Address:

4851 Keller Springs Road, Suite 209

Addison, TX &5001

972-733-0096

Richard@tmaorganics.com

Accepted and agreed as of the date first above written.

THE HUNTINGTON NATIONAL BANK, as Trustee

By _____
    Name _____
    Title _____

Address:

Corporate Trust MI-231
40 Pearl Street, NW
Grand Rapids, Michigan 49503
Attention: Patrick J. O'Donnell, Vice President
Facsimile Number: (877) 377-6318
Email: Patrick.j.odonell@huntington.com